Good morning, and may it please the Court. My name is Laura Franz from the firm of Hunton & Williams, and I represent the appellant Pier 1 Imports in this case. The plaintiff, Appellee Chapman, asked this Court to affirm an award of money damages injunctive relief against Pier 1, despite the fact that it is undisputed that he suffered no actual injury under the law. There were many issues briefed in this case, but I'm going to focus on just two of them for oral argument, standing and no displeading, including fairness. And I'd like to reserve three minutes for rebuttal in the case. Let me ask you a question, Counsel, as you begin. As you know, there was a document which was appended to the complaint. That document, from what I've read in the record, the plaintiff didn't know what the document was, didn't know who'd prepared it, didn't know anything about it, but it was appended to the complaint itself. Was it ever introduced in the record by any affidavit or otherwise? It was technically in the record as an attachment to the complaint, but at no point was it verified in the record. At no point was a foundation set for that. And as I understand it, the complaint was never verified. That's correct. And we're on summary judgment. Yes. Thank you. Okay. As this Court stated in the case of Duran v. 7-11, it is the access barriers that the ADA plaintiff actually encountered or about which he has personal knowledge that confer standing on him under Title III. That's from footnote 5 in the Duran v. 7-11 case. So we have to turn in this case to those particular allegations about which Duran Chapman had personal knowledge, and there were just five of them, and they come from his deposition. He claimed that the pathway to the restroom was blocked as the workers in the Pier 1 store were stocking merchandise. Neither his expert nor Pier 1 expert found a violation. Number two, he alleged that there were no directional signs alerting him to where the accessible bathroom was located. The ADA standards do not require such directional signs unless a store has more than one restroom, one of which only is handicap accommodated. So therefore yes. I think I see where you're going here, and I think you're going to conclude that of the five that he encountered and alleged in his complaint, none of them violated the ADA, or I guess if they did, they were all corrected quickly or something like that? You were correct on the first statement. None of them violated the ADA. There is utterly no evidence in the record that there was ever a violation with regard to any of those claims. Doesn't our case in Devon, is that the name of it? Durand. Durand. In the Durand case, it seemed to me that he said rather clearly that you can allege an ADA violation if on the merits it turns out your standing. Am I misreading Durand in that? I actually don't think Durand goes that far. The facts don't allow it to go that far, because in Durand there were actual violations at the time the complaint was filed. There were nine allegations of violations. The record is a little bit unclear, but you can discern from the record that at least two of them were valid. Now, they were remedied at one point during the case, but that's different from the Pier 1 case in which none of the allegations of violation were ever valid. And I would also point out that you can correct me if I'm wrong, but I tried to read the record to make sure. Isn't it also true that as you move for summary judgment in this matter, that Durand, or that Chapman in this particular matter, did not even present any evidence as to any of the five violations he was supposedly encountered? That is absolutely true. And, in fact, did not even move for summary judgment as to those violations? That is also true. Pier 1 moved for summary judgment as to four of the five allegations made in the deposition, just in an abundance of caution, was granted summary judgment. The fifth one was abandoned during the course of the case. Where Chapman had no actual injury in fact or in law at the time of the complaint, he had no standing at all. He had no injury. This court in Skaggs v. Meridian Hotel also recognized that the types of claims, barriers that are being alleged here, are so trivial in nature that they probably don't give rise to standing even if they had constituted violations of law. But I think more importantly is the fact that since they weren't actual violations, they cannot serve as the foundation for standing, particularly for standing at the injunctive stage of the case. In order to have standing to sue for an injunction under Title III, the plaintiff must be able to show that the risk of future harm is related to the past harm. Now, injunctive relief requires both past harm and future harm. You don't have to do you have to absolutely show some sort of past harm. And a fair reading of all the Supreme Court cases indicates that there's got to be a relationship between the past harm and the future harm. Well, what's your best case on that point? There are several cases. I think Stringer v. White, which is a district court case in terms of the ---- Oh, no, no district court. It's not good authority. Give us Supreme Court or circuit. O'Shea v. Littleton. And that's what court and when? The United States Supreme Court, and I believe it's 1974. All right. If Duran ever had standing in this case, he lost it when it became clear that he was abandoning the claims upon which his standing rested, or at least when it became clear that those claims had been dismissed. Since they weren't real, they couldn't constitute the basis for the ordering of an injunctive relief. Let me ask you another procedural question. It's my understanding that as to this standing allegation, the only real time when it was disputed was in the motion for summary judgment. There wasn't a prior motion ever brought. Standing alone. I agree. I don't believe there was a motion to dismiss in the case. There were affirmative defenses raised at the answer level concerning standing. But really, we were on summary judgment as to standing. Right. First time. Right. And. We're not really looking at the allegations in the complaint here. Right. The complaint wasn't even verified. Well, that's right. I mean, there were certain other problems with the complaint, because not only wasn't it verified, but there was no indication other than conclusory statements that any of the violations listed in the accessibility statement attached to the complaint caused this plaintiff individualized concrete harm. That wasn't even pled. And at no point during the litigation was it established. Let me ask you a further question. As it relates to the things that the district court could review on summary judgment, it seems to me that there was an affidavit or there was a deposition from the plaintiff. And in the deposition from the plaintiff, he suggested that he was never deterred from patronizing the store. That is correct, Your Honor. He also suggested in that deposition that he was never deterred from using the restroom. That is correct. He also suggested that he did not, that the fact that he'd encountered these five things did not deter him from going in the store in the future. That is correct. In fact, he may already have been in the store at the time of his deposition. Right. Is that what he said? At his deposition, I don't remember if it was before or after his deposition. He visited the store a total of three times that were established in the record, two of them before the complaint was filed, one of them after the complaint was filed. Well, I realize that I'm fresh off the district court. Well, not fresh. March of last year, but old district judge. And I have in front of me now a summary judgment. So I'm trying to figure out, it seems to me at that point, I'm looking at facts in the record which have been affid to that I can rely upon. I'm not just looking at the complaint because it wasn't even verified. Isn't that the way it is? That's correct. You know, you might want to save the rest of your time. All right. Let me just say that the second part of our standing argument is, even if this court decided that there somehow was standing initially, there is no basis for the expansion of scope of standing under the Duran v. 7-11 case. Because even under the very broad language of that case, as Justice Smith has indicated, there was no deterrence to entering the store, and there was no deterrence to the equal use or enjoyment of the store. And, therefore, there's no foundation for Duran-style expansion of scope. Plus the fact that Duran still recognizes the irreducible standing requirements that require at least one concrete injury. And there's no concrete injury that can be pointed to here at the time the complaint was filed that can form the basis for Duran-style expansion of scope. I am going to reserve the last three minutes, and I just want to mention that there are serious Rule 8 and fundamental fairness issues in this case that came out of the fact that 27 violations were added one year into discovery, after Pier 1's last chance to file an expert report. And those are the most of the claims that form the basis of the summary judgment in this case. Thank you. Thank you. My apologies for the delay. That's okay. This is a very interesting case, and we want you to have your opportunity to present. Absolutely needy. If you could find a flashlight. If you'd introduce yourself for the record. Of course, Your Honor. Scott Hubbard for the plaintiffs. With me is trial counsel Lynn Hubbard, my father. Since it seems that the panel has quite a few questions, I think I'll start asking, is there anything the panel would like to ask me? Well, since you want to start out that way, let's start. In Duran, it says, allegations that a plaintiff has violated a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers, establish that a plaintiff's injuries is actual or imminent. That's what it says in Duran. That's what it says in Duran. And then I read the record. Where in the record do I find that your client was ever deterred from visiting the accommodation? You won't find that, Your Honor. Where do I find that he was ever deterred from using the restroom in the accommodation? You won't find that either, Your Honor. Where do I find that he wasn't deterred from going back to the store? You won't find that in the record, Your Honor. Where do I find then the ability to give him that absolute in Duran that would establish his right to bring the case? Duran's an interesting opinion insofar as if you look at the underlying basis for Duran, the factual basis for it, and we cite to this in our plate. Could you keep your voice up? My apologies, Judge. I'll close to the microphone and try and speak a little louder. When you look to Duran and when you look to the underlying factual basis for Duran, and we cite to this in our briefs, Jerry Doran, who visited the 7-Eleven facility, visited it at least 10 to 20 times prior to bringing the lawsuit. And he testified during that lawsuit that he was going to visit it in the future. Defense counsel in the underlying factual basis for Duran moved to dismiss it because he wasn't deterred. And, as a matter of fact, it was a fundamental argument raised. Well, the argument was that the store was too far away from home, and therefore he shouldn't have any deterrence because he wouldn't go there in the first place. That was the argument. Actually, I believe there were two separate arguments. Distance was one, but the fact that he continued to visit the store was another. Well, I understand that. And then he said, as I understand what he had to say here, that he was deterred, that he was deterred from visiting it, and that he did encounter barriers which caused him not to visit it. That ---- Oh, excuse me. I didn't mean to cut you off. Oh, no. I was just trying to say what I read from the record. I wasn't there. I'm just reading Duran. That was the ---- because I was trial counsel on Duran, and I did ---- those briefs I actually did oppose. We never argued that he was deterred from Duran. Deterrence claims in ADA cases, and I notified the court of this in response to ---- it was ---- I believe it was either a 28-J letter or an in-bank petition by the defense in Duran v. 7-11. The deterrence claims have a very specific, or at least they did, have a very specific meaning in ADA cases. It's a case where a disabled person cannot or refuses to enter a facility because of the presence of architectural barriers. Now, the problem with Duran v. 7-11 is it blurred that distinction. There were, generally speaking, two types of ADA claims. There were actual visit ADA claims where someone routinely went to a facility and would do so in the future, and that is supported by Steger, the Eighth Circuit case, and the First Circuit case, whose name escapes me, but I cited you. We're not very ---- my colleague's probably better than me, but I'm not very guided by Eighth and First Circuit cases on this particular case. I got a case in the Ninth Circuit dead on about this particular thing, blurring or not blurring. It says certain things in it. And so I take what it says and then I apply it to this case, and now you're suggesting it wasn't deterred. Is it also the fact that none of the allegations that he makes about going to the store in the first place did you even move for summary judgment on? Yes. That is ---- well, yes, that's true, but if I can just make one last point before ---- now we're changing to the complaint issue. One last point on standing. You can look to Long v. Coast Resorts, which is a Ninth Circuit case. You can look to Fortney, which is a Ninth Circuit case. You can look to ---- I think it's Molsky v. Cables, which is a Ninth Circuit case. And the timer just clicked on, so that's all right. I'll try ---- I figured I've spoken for at least five minutes, so I'll try and ---- Well, you don't need to worry. We're not going to get too worried about that. We're trying to get to the bottom line here. Sure. Our worry is that we have this case seemed directly on point, which says what allegations the plaintiff has to make, and I didn't see them here. Those ---- like I said before, Dorn v. 711 did create a spot of confusion by blurring the distinction between a deterrence claim and an actual visit claim by claiming that ---- or by ---- Well, let me ---- several times in Duran, it says the plaintiff must allege an actual concrete injury. Correct. Those words are even ---- what is the actual concrete injury that your client showed? Fair enough. The short answer to that is the failure to make defendant's facility readily accessible to and usable by the disabled. That's the allegation. Not by him, but by the disabled in general? Standing is limited to his particular disability, but the cause of action itself is based not on the plaintiff's denial of full and equal enjoyment and use, which every other Title III statute that comes before you usually deals with, but the defendant's failure to make the facility readily accessible and usable to the disabled. And that was the distinction in Dorn v. 711. And how do we know that on the facts established? In this case. Yeah. Fair enough. Where is the actual concrete injury? Right. Fair enough. Can I have the actual ---- there are two versions of the excerpts of records, so I'll be referring to version number 2. First and foremost, the accessibility survey, which was not put into the record, but was before ---- Oh, if it's not in the record, it's not in the record. Excuse me. It was in the record as, well, CR1. What? It was in the record as CR1, Judge Noonan, but it wasn't offered into evidence for the motions for summary judgment. Well, it's not offered into evidence. It's not in evidence. Don't cite it, please. Don't cite it. It's not in evidence. Excuse me. Let me take a step back, please. No. I'm telling you, it's not in evidence. It's not in evidence. Correct. When the motion for summary judgment was presented to the district court, it was on two issues, ADA violations that were still present at the facility and under act damage claims by plaintiff. Now, if you look in the record, which was submitted to the defendants, you will see evidence of ADA violations that were there, but removed. I would ---- Now, just a minute. We have a motion for summary judgment brought by your defendant, and we have an allegation in the complaint. If it was a motion to dismiss, well, then we'd look at the violation. We'd look at the complaint and see the validity of the complaint and whether you could allege something. But now we're on summary judgment. Celotex suggests that on summary judgment, when the defendant moves for summary judgment, somebody's got to take the burden, take the bull by the horns and put some evidence in that would suggest that the summary judgment ought not be granted. Now, I found no evidence in this record, including the accessibility study or the report by your expert, which was in evidence. I mean, it wasn't admitted. There was nothing there to go with. All of a sudden, the judge, based on what he thought was going to be something which I guess was going to come in the future, decided to make a summary judgment and didn't make it on any of the things that your client suggested in the first place. And, in fact, it didn't bother too much with the accessibility study, though there are two allegations on it that he thought were okay, and went all with the plaintiff's expert. You never amended the complaint, and all it was was sitting there. The ADA violations at issue in the complaint versus the motion for summary judgment are two separate issues. The ADA violations at the motion for summary judgment were those ADA violations that still existed at the time that the expert inspected the facility. What was in evidence on them? What was in evidence? The expert's report is not in evidence, correct? The expert's report was in evidence. Joe Card's report was in evidence. What was it in as? I have to look at the docket for this one. I hope you'll bear with me. I mean, the bottom line is we've got two things going here. Number one, we've got a situation where one moves for summary judgment, and so one is looking for what it is that one has. One is can one proceed to summary judgment, can one even proceed in a case if he won't even amend his complaint, which we've got a case right on point. Your Honor, Pickering v. Pier 1, which I believe is the case that you had on point, the complaint in that instance had absolutely no facts in it. We provided the site accessibility survey three days after the complaint was filed to defense counsel. And I had contacted defense counsel prior to filing the complaint. Pickering v. Pier 1 is entirely consistent with Bell Atlantic. That's standard. As a matter of fact, it's kind of a precursor to Bell Atlantic. Mr. Hubbard? Yes, Judge Gelsen. Let's see if we can kind of put this in order for a moment. Fair enough. The allegations in the complaint were of an ADA, were of ADA violations. And California Building Code violations, yes. Also in the complaint was an allegation that the plaintiff, Chapman, had been deterred from patronizing the restroom in the store because of those alleged violations. We had both actual visit and deterrence languages, yes. That's correct. And that was all alleged in the complaint? Yes, Judge. I think that gives you standing. Then along comes, so if you get a motion to dismiss, you've alleged enough under Durant. Now, then we get into a motion for summary judgment that the defense brings. And at this point, then you're asked to show what evidence you have of ADA violations. Correct. Card is your expert, is that what his name is? He is, yes, Judge. His deposition had been taken? Yes. His deposition was before the court of summary judgment? Yes. In that deposition, he had testified to certain ADA violations that he had found at the premises. Is that correct? I haven't seen the depo, but I'm assuming yes. I think that's correct. Okay. Fair enough, Judge. Now, the problem that I get to is that the, quote, evidence, unquote, before this court, probably did come in from Card and his list of the stuff that he found, what he said in his deposition. I think that was all before the court as a matter of evidence. But you've got a complaint that doesn't allege any of this. And then you get a summary judgment based on violations that are not set forth in the complaint, but that Judge Carlton said the defense was aware of in time sufficient to have responded to them and I think did respond to them. Your Honor, the difference, the distinction between the complaint violations and the violations identified by Card is that there were remediations by the defense prior to Card's inspection, and you can find those in the record. Yeah, that's fine. Well, there's some of that in Duran as well, I think. So it seems to me that the problem you have is with Judge Carlton looking at this case and saying, well, if I deny summary judgment and send it back to the, or then move it on here in the district court, the plaintiff would amend the complaint and allege the violations that still exist. And those are violations that might not have deterred him, but would deter other disabled people and would constitute a violation of the ADA. Is that right? If I followed you, and forgive me, I want to, I have a sneaking suspicion this is a key point. So I would ask you, please, repeat that. Oh, boy. I followed a good chunk of it, Your Honor, but I couldn't follow it all. Well, the problem is, once you get to the evidentiary stage of the case, you have Chapman saying, well, I'm not going to go back to the store, supposedly. He might even say that. I was deterred before. They fixed all of those items or they no longer exist, but there are a bunch of other items. But in any event, I'm not going back to the store. But here are these other violations of the ADA. Now, what does the judge do about that? Does he give judgment? If he, well, that's actually, if he refuses to go back to the store, that in itself and there's case law on this point, district court case, I'm sorry, Judge Noonan, that says that plaintiffs who are going to be sorry if the fact is district court decisions are not precedent. I know. And I just wanted to make that point, but it hasn't come up to the Ninth Circuit yet, which Judge Smith likes me to cite to. But there is. Well, I guess the big problem that I have, I want you to answer the good judge's question. But assuming in that question is that your client ever said he was deterred from going to the store. Judge, he has never said, to my knowledge, he has never said that he has been deterred from the store. And I think this Court, if the Court found that because he never said that he was deterred from going to the store and limited his scope to remove barriers, because of that, I think that conflicts with the United States Supreme Court and traffic ante and would create a circuit conflict. I thought there was something in the complaint about that, that he backed away from it at his deposition, but that it was in the complaint. I could be wrong. There were barriers identified in the complaint that were, it says stop. Would you like me to stop or would you like me to keep going? You should answer his question. Fair enough. There were barriers identified in the complaint that were touched upon or were still alive at the summary judgment phase. The path of travel. The fact that we didn't ultimately prevail on it is a, doesn't mean that it wasn't still a live case in controversy from a barrier identified in the complaint which satisfies the Doran requirement. There were path of travel, well, excuse me, prior to this, there were path of travel and exterior issues, which if you look at Doran or if you look at Chapman's deposition, you'll see that the defense agreed on the record that they were going to make remediation efforts. These were the exterior barriers identified in our complaint. They were taken away. They also, even their own expert identified the toilet seat cover was improperly placed. That was identified in the complaint. They admit that was still active at the motion for summary judgment level. I mean, based on the Doran versus 711 standard, once you pull out the confusion regarding deterrence and realize that the Ninth Circuit no longer means deterrence claims to claims where someone doesn't actually visit, but now means that deterrence is where a plaintiff is deterred from the full and equal enjoyment and use of a facility in the same manner as able-bodied individuals, you see that the complaint alleges that the defendants failed to make their facility readily accessible to and usable by the disabled, and that the defense removed those barriers in the process of this lawsuit. Thank you. Thank you, Your Honor. I think we're through. When you're ahead, you don't need a keyboard. Your Honor, I just wanted to clarify just a couple of things. The Court, in finding all of its findings against Pier 1, relied on contested facts in violation of the summary judgment standard. The Pier 1 was not permitted to file an expert report in response to the 27 surprise allegations that were listed. So even if the courts made a finding that two months was sufficient time, it wasn't on a practical basis, there was no ability to really respond. For example, on the issue of dimensional tolerances, which Judge Carlton I think improperly found to be an affirmative defense, Pier 1 simply had no ability to put on a construction dimensional tolerance expert. Therefore, we have a finding that a counter that is one-quarter of an inch above what the regulations say it is, is illegal, even though that ought to be within dimensional tolerances, because there wasn't any expert on it. Let me ask you one more time. As I understand it, there is no affidavit supporting the accessibility report anyplace in the record. That is correct. Did the report of their expert have any affidavit or otherwise in the record supporting it? The expert himself. The expert came with a report after the accessibility. The expert went to the case, prepared a report. I believe that there was an affidavit in support. There was a deposition, or was there an affidavit supporting the report? I believe there was both. Okay. The deposition occurred after the report was issued, one month after the report was issued, so we were then like And so a test you can have on that is that they should have amended the complaint in order to allow you to plead against it. Exactly. And or given you more time to file your own affidavit contrary to it. Exactly. The defense actually made a 56-F motion. The defense contended that these issues could not be brought up without an amendment to the complaint. And giving us time to file a declaration wouldn't have been sufficient, because the we wouldn't necessarily have had an expert that was ready and able to respond on these particular issues. So that's your argument, really, about the report itself. It should have had amendment to the complaint, and if not, allowed you additional time to get the expert. That's really your argument. That's correct. And that would be consistent with Pickering v. Pier 1, with Skaggs v. Meridian, and even, Your Honor, with footnote 10 in Duran v. 711. Thank you. I think it goes with I think your time is finished. Thank you very much. Thank you. Case 0716326, Chapman v. Pier 1 Imports, is submitted.
judges: Noonan, Thompson, Smith